Kenneth L. Neeley, 025899
Geoffrey M Khotim, 019513
Karen G Bentley, 034148
**NEELEY LAW**
1120 S. Dobson Rd., Ste. 230
Chandler, Arizona 85286
Tel: 480.802.4647 | Fax: 480.907.1648
ECF@neeleylaw.com
*Attorneys for Debtor(s)*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 7 |
| SHAINA DAWN PFAFF aka SHAYNE PFAFF, | Bankruptcy Case No.: 2:21-bk-02933 BKM |
| Debtor | |
| SHAINA DAWN PFAFF aka SHAYNE PFAFF, | Adversary Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |
| ENCINITAS LOAN FUNDING, a Delaware Limited Liability Corporation; | |
| and | |
| LAUNCH SERVICING, a South Dakota Limited Liability Corporation; | |
| and | |
| CHEGG, a California Corporation. | |
| Defendant. | |

Comes Now SHAINA DAWN PFAFF aka SHAYNE PFAFF ("Debtor" or "Plaintiff"), by and through undersigned counsel, for his Compalint to Determine Dischargeability of Debt against Encinitas Loan Funding LLC ("Defendant" or "Encintas"), Launch Servicing LLC, ("Defendant" or "Launch"), and Chegg, Corporation, ("Defendant" or "Chegg") and respectfully alleges as follows:

## JURISDICTION

1. On April 20, 2021, Debtor filed a voluntary petition (the "Petition") for no-asset bankruptcy relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Arizona.

2. On May 24, 2021, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Meeting of Creditors").

3. On August 4, 2021, the Court granted Debtor a discharge pursuant to the Order of Discharge (the "Discharge").

4. This is an adversary proceeding in which Debtor seeks a determination as to the dischargeability of the debt owed by the Debtor to the Defendants under Bankruptcy Code § 523(a)(8).

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

6. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF FACTS

7. Debtor enrolled in an online coding program referred to as a "bootcamp" through a company named Thinkful, whose parent company is Chegg.

8. Thinkful provides online "software engineering" programs and "coding bootcamps" which advertise high levels of employment in high paying jobs upon "graduation."

9. Thinkful is not an accredited educational institution.

10. Thinkful is a software program for purchase without licensed professors or instructors of any kind. "Students" are provided "mentors" who simply monitor progress but do not educate or instruct.

11. Debtor did not graduate from Thinkful with any degree, license or certification.

12. Debtor applied for and received loans (the "Loans") from Defendants.

13. Debtor used the entirety of the funds borrowed from Defendants for costs relating to Thinkful.

14. The Loans, as originally made by Defendants, were not made, insured, or guaranteed by a governmental unit.

15. Encinitas Loan Funding is a Delaware limited liability corporation which serves as a provider of a variety of loans.

16. Launch Servicing is a South Dakota limited liability corporation which serves as a provider of a variety of loans to undergraduate and graduate students.

17. Chegg is a California Corporation offering unaccredited educational programs through Thinkful.

18. Upon information and belief, Defendants Encinitas and Launch are the current holder of the note giving rise to the claim that comprises the remaining balance of the Loan and/or is a servicer of the Loan for the holder.

19. Defendant Chegg's advertising uses words like "tuition" and "curriculum" and "student" commonly associated with traditional educational institutions which mislead potential purchasers.

20. Debtor was grossly misled by Defendant Chegg's portrayal of Thinkful as an educational program.

21. Debtor is unable to obtain employment in his intended field as no educational benefit was received.

22. Debtor is a point of sale employee with DoorDash and has a minimal income.

23. Debtor made payments on the loans.

24. Debtor's payments have made less than minimal progress towards paying off the balance of the debt.

25. Debtor faced significant financial hardships following the program. Debtor filed Chapter 7 bankruptcy in 2021 to obtain relief and to retain a more sustainable financial situation.

26. Since the bankruptcy, Debtor has been unable to get ahead financially because of the student loans.

## **CLAIM NOT EXCEPTED FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(8)**

27. Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 19 of this Complaint as set forth above.

28. 11 U.S.C. § 523(a)(8) provides, in relevant part, that:
> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
> …
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
> > (A)
> > > (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> >
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

29. Sections 221(d)(1) and (d)(2) of the Internal Revenue Code provide, in pertinent part, that:
> **(1) Qualified education loan**
> The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
> **(A)** which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
> **(B)** which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
> **(C)** which are attributable to education furnished during a period during which the recipient was an eligible student.
> …
> **(2) Qualified higher education expenses**
> The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by the sum of—
> **(A)** the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
> **(B)** the amount of any scholarship, allowance, or payment described in section 25A(g)(2).
> For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by section 25A(f)(2), except that such term shall also include an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training.

30. Section 25A(f)(2) of the Internal Revenue Code provides, in pertinent part, that:

> **(f)(2) Eligible educational institution**
> The term "eligible educational institution" means an institution—
> **(A)** which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of the enactment of this section, and
> **(B)** <u>which is eligible to participate in a program under title IV of such Act</u>.
> Emphasis added.

31. According to the Bankruptcy Appellate Panel ("BAP") in <u>Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)</u> (B.A.P. 9th Cir., 2017):

> We have previously said that § 523(a)(8) excepts four types of educational claims from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code. <u>Institute of Imaginal Studies v. Christoff (In re Christoff)</u>, 527 B.R. 624, 632 (9th Cir. BAP 2015) (quoting *Benson v. Corbin (In re Corbin)*, 506 B.R. 287, 291 (Bankr. W.D. Wash. 2014)).

32. To the extent any portion of the Loans were not made, insured, or guaranteed by a governmental unit, or made under any program partially or fully funded by a governmental unit or nonprofit institution, such portion of the Loans are not excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(i).

33. Pursuant to the BAP in <u>Kashikar</u>, citing <u>Christoff</u>, although 11 U.S.C. § 523(a)(8)(A)(ii) requires that funds be received, it need not be the debtor who actually receives the funds, so long as cash is "advanced to **or on behalf of the debtor**." <u>In re Kashikar,</u> at p.10 (emphasis in original, quoting <u>In re Christoff</u>, at 634 n.9). In <u>Kashikar</u>, the BAP determined that the funds the school had received on the debtor's behalf constituted "funds received". However, the BAP disagreed with the lower court's determination that the loan constituted an "educational benefit". <u>Id.</u> at p.11. The BAP, again referring to their prior decision in <u>Christoff</u>, looked to the changes to § 523(a)(8) in BAPCPA, wherein "Congress created a 'separate category delinked from the phrases 'educational benefit or loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in § 523(a)(8)(B)." <u>Id.</u> at pp. 11-12 (quoting <u>In re Christoff</u>, 527 B.R. at 634). Ultimately the BAP held that a loan was not an "educational benefit" as contemplated by § 523(a)(8)(A)(ii). <u>Id.</u> at p. 12.

34. The Loans in the present case are not excepted from discharge pursuant to §523(a)(8) because they are <u>not</u> "(1) loans made, insured, or guaranteed by a governmental unit; (2) loans

made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; [or] (4) [a] 'qualified educational loan' as that term is defined in the Internal Revenue Code." Id.

35. The loans in question here are clearly not qualified educational loans. Although these loans were paid to debtor in a reasonable period surrounding the use of the program, Debtor was not a student. He did not have any meaningful instruction provided to him. The assigned mentor is a glorified customer service representative, was frequently unavailable, and did not provide relevant educational knowledge to allow Debtor an educational benefit. Debtor could not avail himself of any certification, licensure, or degree as this is not an educational program.

36. Thinkful is not an eligible educational institution. It is a for profit company that sells a canned software program. Thinkful refers to the program as "curriculum" to unsuspecting consumers who believe it is an educational program. Thinkful is not accredited as an educational institution. Thinkful is not recognized by the Department of Education as an educational institution.

37. The loans were not used for qualified educational expenses. Debtor did not have the opportunity to graduate with any type of degree, licensure, or certification which is a hallmark of an educational expense through an educational institution. There is no opportunity for internship or residency programs through Thinkful. The loans were used to purchase a software program - no different than what can be purchased at a big box store or rented through a community library. This program is clearly a consumer debt and does not comply with the standard of a qualified educational expense as described above.

38. Thinkful, by and through its parent company Chegg, use predatory and harmful advertising schemes which misled Debtor into believing he would "graduate" with a coding degree that would enable him to work at a high paying job as a software engineer. The website and materials are rife with language used in higher education institutions including "tuition," "curriculum," "admissions" "courses" and "student." However, any disclaimers about not being accredited are hidden and very difficult to find. Debtor believed he was attending a school to receive a coding degree and took out loans to invest in his future. However, Debtor was misled

and incurred a significant amount of debt due to these false and misleading practices and was harmed by this. The law is clear. These loans are not qualified educational loans. These loans are consumer debt and are thereby dischargeable in bankruptcy.

## UNDUE HARDSHIP UNDER 11 U.S.C. § 523(a)(8)

39. Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 38 of this Complaint as set forth above.

40. Even if the Loans in the present case fall into one of the categories that Kashikar describes as excepted from discharge, the Debtor still qualifies for discharge because repaying the loans would be an "undue hardship."

41. The Code does not define "undue hardship", but the Ninth Circuit Court of Appeals has adopted a three-part test for analyzing whether not discharging a debt would pose an "undue hardship" on the debtor. <u>United Student Aid Funds Inc. v. Pena (In re Pena)</u>, 155 F.3d 1108, 1111-1112 (9th Cir. 1998) (adopting test set forth in <u>Brunner v. New York State of Higher Educ. Servc. Corp. (In re Brunner)</u>, 46 B.R. 752, 753 (S.D. N.Y. 1985), aff'd 831 F.2d 395 (2d. Cir. 1987)). The <u>Brunner</u> test requires a plaintiff to prevail on three separate inquiries:

1) The Debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself if forced to repay the loans;

2) Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3) The Debtor has made good faith efforts to repay the loans. <u>Pena</u>, 155 F.3d at 1112 n.4.

### Minimal Standard of Living

42. The first prong of the <u>Brunner</u> test requires that a debtor be unable to maintain a "minimal" standard of living if forced to repay the loans based on current income and expenses. The Debtor here has a minimal income as a merchant services specialist at DoorDash. Debtor has paid on the loans. Debtor continues to struggle to meet his monthly bills and entered into a chapter 7 bankruptcy in 2017. Debtor continues to struggle financially with these payments after the

Case 2:21-ap-00214-BKM    Doc 1    Filed 08/23/21    Entered 08/23/21 13:51:23    Desc
Main Document    Page 7 of 10

discharge. Thusly, the student loans preclude Debtor from maintaining a minimal standard of living. The first prong of the Brunner test is satisfied.

### Prolonged and Indeterminate Duration

43. Under the second prong of the Brunner test, there must be additional circumstances that exist, that indicate the state of affairs is going to persist for a significant portion of the repayment period of the student loans. Debtor received no educational benefit. He did not learn any knowledge or acquire any skill which could have allowed him to move forward in his employment and earning potential. Debtor was misled and must now work significant hours to repay a loan with no educational benefit. The amount of hours required to do this prevents Debtor from attending a traditional educational program that could allow financial growth. Consequently, Debtor's inability to maintain a minimally adequate standard of living will remain until the loans are discharged. The second prong of the Brunner Test is satisfied.

### Good Faith Effort to Repay

44. Under the third prong of the Brunner test, the Debtor must show a good faith effort to repay the loans. Debtor consistently made payments on the loans since they became due but the amount due remains exorbitant for his income level and earnings. Debtor's payments made no dent in the principal amount of the loans and they continue to grow exponentially. The third prong of the Brunner test is satisfied.

### CONCLUSION

The Loans in question are not protected from discharge because they are not qualified education loans from a qualified educational institution. Defendants provided funding for a purchase of a software program with no reasonable educational benefit. The loans are consumer debt and should be discharged. Additionally, Debtor easily meets the standard of undue hardship and the Loans should be discharged on this ground as well.

*//*

*//*

**WHEREFORE**, Debtor respectfully requests that this Court enter an order:

A. Finding that the Loans are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8);

B. Finding that the Loans were discharged pursuant to 11 U.S.C. § 1328; and

C. Granting any other and further relief as the Court deems just and proper.

DATED: August 23, 2021                                    **NEELEY LAW FIRM, PLC**

*/s Karen Bentley*
Kenneth L. Neeley
Geoffrey M Khotim
Karen G Bentley
*Attorneys for Plaintiffs*

**Certificate of Service**

Copies of the foregoing electronically filed through ECF on the _23__ day of _August 2021.

Copies of the foregoing delivered by certified mail with return receipt requested on the _23__day of August 2021 to:

Encinitas Loan Funding LLC
c/o National Registered Agents, Inc.
160 Greentree Dr Ste 101
Dover DE 19904

Encinitas Loan Funding LLC
402 W Broadway 20th Floor
San Diego CA 92101

Launch Servicing LLC
6009 S Sharon Ave #105
Sioux Falls SD 57108-5753

Chegg
3990 Freedom Cir
Santa Clara CA 95054